# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| RICKY OUTLAW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:09-CV-186-TLS |
| | ) |
| NOE J. MARANDET, M.D., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Ricky Outlaw, a prisoner proceeding *pro se*, submitted a Complaint [DE 1], an *In Forma Pauperis* Petition [DE 2], and a Motion for a Temporary Restraining Order [DE 3] along with a Memorandum in Support [DE 4] and what he calls a Motion to Produce [DE 5].Outlaw is barred from proceeding *in forma pauperis* by 28 U.S.C. § 1915(g) because he has on three or more[1] prior occasions filed a complaint or appeal that contained a claim which did not state a claim for which relief could be granted. An inmate with three or more "strikes" "can use the partial prepayment option in § 1915(b) only if in the future he is under imminent danger of serious physical injury." *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1025 (7th Cir. 1996) (internal quotations omitted).

Although Outlaw does not directly address being "struck out," court records indicate that he has been informed of this fact on three prior occasions.[2] He does not squarely argue that he is

---

[1] Indeed, it appears that he has done so four times: (1) *Outlaw v. Newkirk*, 3:97-CV-396, claims dismissed for failure to state a claim on August 12, 1997; (2) *Outlaw v. Anderson*, 3:01-CV-441, defendants dismissed for failure to state a claim against them on January 30, 2002; (3) *Outlaw v. Cadwell*, 3:01-CV-454, case dismissed for failure to state a claim on April 19, 2002; and (4) *Outlaw v.Ridley-Turner*, 3:02-CV-346, case dismissed for failure to state a claim on May 17, 2002.

[2] In *Outlaw v. Kalu*, 1:06-CV-041, he was informed that he had three or more strikes in this Court's order denying him leave to proceed *in forma pauperis* on April 12, 2006, [DE 4] and again on April 28, 2006, in the order denying his motion to reconsider that ruling [DE 5]. He was also informed that he could not proceed *in forma*

in imminent danger of serious physical injury, but "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotations omitted). Therefore, his request for injunctive relief for a denial of medical treatment will be construed as an argument that he is in imminent danger.

Outlaw argues that "the defendants from 1991 through to 2009 was aware of plaintiff having the HCV [Hepatitis C Virus] and took no action towards treatment." (Mot. for Temp. Restraining Order 3.) He argues that he "was denied Hep. C treatment from 1991 up to and including 2009 and on going." (Compl. 4.) This is not the first time that Outlaw has filed a lawsuit about his medical treatment for Hepatitis C. What makes this claim different is that his current factual allegations are inconsistent with his prior lawsuits. In *Outlaw v. Ridley-Turner*, 3:02-CV-346, he argued that he contracted Hepatitis C in 1999 and was diagnosed in January 2001. *See Outlaw v. Ridley-Turner*, No. 02-2545, 54 F. App'x 229, 230 (7th Cir. 2002). Furthermore, in *Outlaw v. Kalu*, 1:05-CV-139, the Pendleton Correctional Facility notified this Court that he had been released on parole on July 15, 2005. (*See* Pendleton Mem. 1, DE 11.) While he was on parole, he committed a battery resulting in his reincarceration. *See Outlaw v. State of Indiana*, No. 02A04-0704-CR-184 870 N.E.2d 1094 (Ind. Ct. App. Aug. 3, 2007) (table opinion).[3]

---

*pauperis* pursuant to 28 U.S.C. § 1915(g) in the order of dismissal on May 8, 2006 [DE 7].

[3] The Court of Appeals of Indiana stated:
> On August 11, 2005, Outlaw walked into Mark's City Market ("the Market") in Allen County, proceeded to the beer aisle, placed six cases of beer in a cart, and walked out of the store without paying. Sara Allen ("Allen"), who was working at the Market, saw Outlaw take the beer from the store and followed him outside. Once outside, Allen saw Benjamin Reinert ("Reinert") and asked him if he saw a man with six cases of beer. Reinert told Allen that he saw the man go around the corner, and the two went around the corner and saw Outlaw pushing the cart full of

2

Nevertheless, it is irrelevant to the question of whethers he is now under imminent danger of serious physical injury, whether he contracted Hepatitis C in 1999 or before 1991, and whether he was continuously incarcerated from 1991 to the present or was briefly released on parole. Rather those questions are answered by reviewing the medical care that he acknowledges receiving. He states that, "in 2007 a liver biopsy was performed . . . ." (Compl. 4.) That biopsy indicated a "possible progression toward cirrhosis," (*id.* at 8), but it did not confirm that he had yet developed cirrhosis. As a result, his liver enzymes were monitored via a blood test. On February 7, 2008, his "liver enzymes had improved significantly . . . ." (*Id.* at 9.) On September 24, 2008, another test was ordered, but Outlaw refused to allow his blood to be drawn. Twice thereafter, on February 17, 2009, and again on March 24, 2009, he met with two different physicians who explained that, based on the blood tests that he had permitted, his test results did not qualify him for the drug therapy that he has demanded.

According to the Centers for Disease Control and Prevention (CDC), a part of the United States Department Health and Human Services,

> People with chronic hepatitis C should be monitored regularly for signs of liver disease and evaluated for treatment. The treatment most often used for hepatitis C is a combination of two medicines, interferon and ribavirin. However, not every person with chronic hepatitis C needs or will benefit from treatment. In addition, the drugs may cause serious side effects in some patients.

---

beer. Allen told Outlaw that if he left the beer, no charges would be filed against him. Outlaw then turned, walked toward Allen, and kicked her in the stomach. When Outlaw tried to hit Allen, Reinert jumped on Outlaw, and the two started to fight. Outlaw reached in his pocket and pulled out a knife, and Reinert backed away. Outlaw ran toward Reinert, began swinging his knife at him, and eventually cut Reinert's arm. Reinert, who also had a knife, opened his knife and stabbed Outlaw in the stomach in self-defense. When Outlaw continued to advance toward Reinert, Reinert again stabbed Outlaw in the stomach. Outlaw then opened one of the cases of beer, threw bottles at Allen and Reinert, and then walked away. After the police arrived on the scene, they found Outlaw lying in some nearby bushes.

*Outlaw v. State of Indiana*, No. 02A04-0704-CR-184, 870 N.E.2d 1094, at *1.

Centers for Disease Control, Hepatitis C, FAQ–How is chronic hepatitis C treated?, http://www.cdc.gov/hepatitis/C/cFAQ.htm#cFAQ25. Based on this Complaint and the medical, scientific evidence about Hepatitis C, there is no basis for finding that Outlaw is under imminent danger of serious physical injury. Rather, it is clear that he is suffering from a chronic disease that was being monitored by his doctors until he refused blood tests necessary to evaluate his ongoing care.

Furthermore, in his Complaint, he attempts but fails to state a claim upon which relief can be granted. A prisoner "is not entitled to demand specific care." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (stating that a prisoner "is not entitled to the best care possible"); *see also Kendrick v. Frank*, 310 F. App'x 34, 38 (7th Cir. 2009) (stating that there is not "a constitutional right to demand either a particular type of medical treatment or a certain specialist" (citing *Forbes*, 112 F.3d at 267)). Furthermore, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The standard for Outlaw's claim is as follows:

> For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.

*Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (citations and internal quotations omitted). In addition,

> There is not one "proper" way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("[T]he Constitution is not a medical code that mandates specific medical treatment."). A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698 (citation and some internal quotations omitted). In *Jackson*, when a doctor decided that certain medical treatment was not appropriate, the Seventh Circuit ruled against the prisoner-plaintiff and stated: "'What we have here is not deliberate indifference to a serious medical need, but a deliberate decision by a doctor to treat a medical need in a particular manner.'" *Id.* at 698 (quoting *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)).

In this case, Outlaw's physicians have ordered that his liver enzymes be monitored, but Outlaw refused to permit them to draw blood for the test. He can state no claim for deliberate indifference when he refuses the treating physicians' treatment and monitoring recommendations. Although it does not appear that Outlaw is under imminent danger of serious physical injury, if he is, it is because of his own refusal to cooperate with his doctors' efforts to monitor his liver enzymes. Accordingly, 28 U.S.C. § 1915(g) does not permit him to proceed *in forma pauperis*.

Although this analysis is sufficient to resolve the specific claims presented by Outlaw in this case, the Court must address his effort to proceed with a meritless claim without pre-payment of the filing fee. The Seventh Circuit has warned:

> Litigants to whom § 1915(g) applies take heed! An effort to bamboozle the court by seeking permission to proceed *in forma pauperis* after a federal judge has held that § 1915(g) applies to a particular litigant will lead to immediate termination of the suit. Moreover, the fee remains due, and we held in *Newlin v. Helman*, 123 F.3d 429, 436-37 (7th Cir. 1997), that unpaid docket fees incurred by litigants subject to § 1915(g) lead straight to an order forbidding further litigation. Sloan's appeal is dismissed for failure to pay the appellate filing and docket fees. Until Sloan has paid in full all outstanding fees and sanctions in all civil actions he has filed, the clerks of all courts in this circuit will return unfiled all papers he tenders. This order does not apply to criminal cases or petitions challenging the terms of his confinement, and may be reexamined in two years under the approach of *Newlin* and *Support Systems International, Inc. v. Mack*, 45 F.3d 185 (7th Cir. 1995).

*Sloan v. Lesza*, 181 F.3d 857, 859 (7th Cir. 1999). So too, this meritless case will be dismissed, and Outlaw will be assessed another strike.[4] The filing fee will be assessed, and Outlaw is restricted until he has paid in full all outstanding filing fees and sanctions. The restriction imposed by this Order does "not impede him from making any filings necessary to protect him from imprisonment or other confinement, but . . . [it does] not let him file any paper in any other suit . . . until he pays the money he owes." *Support Sys. Int'l v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995). This Order also does not restrict him from filing a notice of appeal in this case, but if he does so, he will incur an additional $455 filing fee for the appeal that will further prolong the duration of his restriction.

For the foregoing reasons, the Court:

(1) DISMISSES this case pursuant to 28 U.S.C. § 1915A;

(2) ORDERS the Plaintiff, Ricky Outlaw (IDOC # 850650) to pay (and the facility having custody of him to automatically remit) to the Clerk of this Court 20 percent of the money he receives for each calendar month during which he receives $10.00 or more, until the $350.00 filing fee is paid in full;

(3) DIRECTS the Clerk to return, unfiled, any papers filed in any case by or on behalf of Ricky Outlaw (except for a notice of appeal or unless filed in a criminal or habeas corpus proceeding) until he has paid in full all outstanding fees and sanctions in all civil actions in any federal court;

---

[4] Because Outlaw has already "struck out" pursuant to 28 U.S.C. § 1915(g), the assessment of yet another strike is of little meaning. Nevertheless, this case does not state a claim, and it must therefore be classified as a strike.

6

(4) DIRECTS the Clerk to note on the docket of this case any attempted filings in violation of this Order; and

(5) DIRECTS the Clerk to ensure that a copy of this Order is mailed to each facility where the Plaintiff is housed until the filing fee has been paid in full.

SO ORDERED on July 16, 2009.

     s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT